# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL MARCUS GANN,<br><br>        Plaintiff,<br><br>   v.<br><br>VERA-BROWN,<br><br>        Defendant. | Case No. 1:18-cv-00084-BAM (PC)<br><br>ORDER DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SUR-REPLY<br>(ECF No. 67)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES<br>(ECF No. 57) |

**I.    Background**

Plaintiff Nathaniel Marcus Gann, also known as Aerith Natalia Asora,[1] ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's second amended complaint against Defendant Vera-Brown

---

[1] Although Plaintiff has not moved to change her name in this action, the Court takes judicial notice of *Asora v. Ugwueze*, Case No. 1:19-cv-01350-JLT-CDB, in which Plaintiff filed a notice indicating that as part of her transition from Male to Female, she legally changed her name from Nathaniel Marcus Gann to Aerith Natalia Asora. *Asora*, Docs. 71, 81. The Court also takes judicial notice of public information stored on the CDCR California Incarcerated Records and Information Search ("CIRIS") website. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d. 1016, 1024 (N.D. Cal. 2014) (court may take judicial notice of information on "publicly accessible websites" not subject to reasonable dispute); *Louis v. McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d 1153, 1155 n.4 (C.D. Cal. 2006) (court may take judicial notice of state agency records). A search of CIRIS for the name "Nathaniel Marcus Gann" produces no results, while a search for Plaintiff's CDCR number, G-64542, provides information for Aerith Natalia Asora. Finally, Plaintiff has referred to herself using feminine pronouns and included her new name in recent filings in the instant action. (*See, e.g.*, ECF Nos. 62, 71.) Accordingly, the Court will refer to Plaintiff using feminine pronouns going forward, and Defendant is directed to do the same. If Plaintiff wishes to change her name on the docket for this action, she may file a motion requesting the change.

1

("Defendant") for deliberate indifference to serious medical needs in violation of the Eighth Amendment. All parties have consented to United States Magistrate Judge jurisdiction. (ECF No. 52.)

On February 18, 2022, Defendant filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act.[2] (ECF No. 57.) Plaintiff filed an opposition on March 7, 2022.[3] (ECF No. 62.) Defendant filed a reply brief on March 14, 2022. (ECF No. 64.)

Plaintiff filed a sur-reply on April 13, 2022. (ECF No. 66.) Defendant filed a motion to strike Plaintiff's sur-reply on April 18, 2022. (ECF No. 67.) Plaintiff did not file a response or otherwise oppose the motion to strike.

The motion for summary judgment and motion to strike Plaintiff's sur-reply are deemed submitted.[4] Local Rule 230(l).

## II. Defendant's Motion for Summary Judgment

### A. Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to

---

[2] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 57-2.)

[3] On February 25, 2022, prior to filing her opposition, Plaintiff also filed a motion to compel discovery. (ECF No. 58.) Despite the Court granting Defendant's motion to stay merits-based discovery, (ECF No. 61), and the fact that the majority of Plaintiff's motion to compel related to merits-based discovery, (ECF No. 58), Defendant filed an opposition on March 11, 2022. (ECF No. 63.) In light of Plaintiff's timely filing of her opposition to the motion for summary judgment with no reference to the need for further discovery or the pending motion to compel, and the conclusions below, the Court finds it unnecessary to rule on Plaintiff's motion to compel in resolving Defendant's motion for summary judgment.

[4] These motions were dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the prolonged delay in resolution.

all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows they failed to exhaust. *Id.*

Defendant must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to Plaintiff to show something in her particular case made the existing and generally available administrative remedies effectively unavailable to her. *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendant. *Id.* (quotation marks omitted).

**B.     Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendant bears the burden of proof in moving for summary judgment for failure to exhaust, *Albino*, 747 F.3d at 1166, and must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172. If the defendant carries their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

## III.   Discussion

### A.   Summary of CDCR's Administrative Review Process

At the relevant time, "[t]he California prison grievance system ha[d] three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (repealed June 1, 2020) & *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010)). *See also* Cal. Code Regs. tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies….") (repealed June 1, 2020).

Pursuant to this system, an inmate may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." *Id.* at § 3084.1(a).

The process was initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal. *Id.* at § 3084.2(a). In the appeal form, prisoners must list all staff members involved and describe their involvement in the issue. *Id.* at § 3084.2(a)(3). If the inmate does not have the requested identifying information about the staff member, they must provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify

4

1   the staff member in question. *Id.*

2           **B.**       **Relevant Allegations in Second Amended Complaint**

3           The events in the second amended complaint are alleged to have occurred at the California

4   Substance Abuse Treatment Facility ("SATF") in Corcoran, California.  The remaining named

5   defendant in this action is Defendant V. Vera-Brown ("Defendant"), employed as a nurse at

6   SATF during the relevant time period.  (ECF Nos. 27, 41.)  Plaintiff alleges as follows.

7           Plaintiff alleges that she has pancreatic atrophy.  (ECF No. 42.)

8           On December 20, 2015, Plaintiff's gastro-intestinal/abdominal pain intensified.  She went

9   to medical, but was told to return on Monday by Defendant.

10          On December 21, 2015, Plaintiff went to medical and was instructed to return later.  When

11  Plaintiff later returned, she was told that she would be called out when medical had time.

12  Plaintiff's condition continued to worsen, but she was never called out by Defendant.

13          On December 22, 2015, Plaintiff went to medical and was instructed to return to her

14  assigned housing.  Plaintiff insisted that she be seen.  Defendant told Plaintiff that the doctor

15  would not see her.

16          On December 23, 2015, Plaintiff was gravely ill and had been unable to consume water

17  for over 24 hours.  Plaintiff again went to medical and was turned away by Defendant.  Plaintiff

18  was told to put in a slip and she would be seen within 5 days.

19          Plaintiff submitted a Health Care Services Request Form and indicated it was an

20  emergency, citing vomiting, vertigo, loss of extremity sensation and loss of consciousness.  The

21  form was turned in to Defendant, who scoffed and placed the request in the box.  Plaintiff

22  informed Defendant that she needed to see a doctor and it was an emergency.  Defendant told

23  Plaintiff to wait until she was called out.

24          That same day, Plaintiff went to chow at her assigned time.  She was accompanied by

25  other inmates who assisted her to walk.  While at the dining hall, Plaintiff lost the capacity to

26  walk or stand.  She was picked up by other inmates and carried to correctional staff.  Correctional

27  staff instructed the inmates to carry Plaintiff to the gym where medical was currently operating.

28  ///

After being carried to the gym, Plaintiff was placed onto a small armless chair. Defendant stated, "I told you, go away—we'll call you in a few days." (*Id.* at 19.) Plaintiff responded, "I can't walk. I can't stand. I can't feel my body." Defendant turned away from Plaintiff and left. Sometime later, Plaintiff began to vomit blood and bile. She was given a trashcan. After vomiting, Plaintiff fell to the floor, knocking her head and beginning to choke. Defendant stated, "I don't give a fuck, [she] can lay there and die." (*Id.*)

Correctional staff entered the gym, saw Plaintiff on the floor and instructed her to rise. Plaintiff was unable to comply. Correctional staff then asked if they were going to check Plaintiff or if staff had to hit the alarm. Defendant then came over and placed a blood pressure machine on Plaintiff. The first three attempts resulted in an error. Defendant then had Plaintiff held upright to get a reading. Plaintiff was placed back onto a chair that had been moved so that Plaintiff could lean against the wall. At that time, Plaintiff began to heave, fell to the floor and lost consciousness. She later awoke on a gurney.

Plaintiff's vitals revealed that her temperature was approximately 3 degrees above normal, her heartrate was 50% higher than normal and she had pain and measurable symptoms in her abdomen. Plaintiff was evaluated by Dr. Scharffenberg, who sent Plaintiff via ambulance to the emergency room at Mercy Hospital. Prior to transport, she was given intravenous fluids for dehydration.

Upon arrival at the hospital, an ultrasound revealed abnormalities in Plaintiff's abdomen. A CT scan with contrast revealed pancreatic atrophy, particularly of the pancreatic head and ulcinate process. Plaintiff also had abnormal bilirubin.

**C.   Undisputed Material Facts (UMF)[5]**

1. CDCR and the California Substance Abuse Treatment Facility ("SATF") have a comprehensive administrative appeals system for prisoners' healthcare complaints,

---

[5] *See* Defendant's Statement of Undisputed Facts and Conclusions of Law in Support of Defendant's Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies, (ECF No. 57-1), and Plaintiff's Reproduction of Itemized Facts, (ECF No. 62, pp. 6–8). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

6

1    described in the California Code of Regulations, Title 15, section 3084, *et seq.*[6] Section

2    3084.1(a) provides that any inmate may appeal any departmental decision, action,

3    condition, or policy which they can demonstrate as having a material effect upon their

4    welfare. Cal. Code Regs., tit. 15, § 3084, *et seq.*; (ECF No. 57-5 ("Hart Decl.") ¶ 2; ECF

5    No. 57-3 ("Flores Decl.") ¶¶ 2, 3).

2. Under title 15 of the California Code of Regulations, an inmate has 30 calendar days to submit an appeal from the occurrence of the event or decision being appealed, or upon first knowledge of the action or decision being appealed. Cal. Code Regs., tit. 15, § 3084.8(b); (Hart Decl. ¶ 6).

3. Subject to exemptions not outlined in the regulations, to exhaust the administrative appeal process, the inmate must complete their appeal through the Final Level of Review. Cal. Code Regs., tit. 15, § 3084.7; (Hart Decl. ¶ 7).

4. The grievance procedure requires the inmate to identify, by name and title or position, each staff member alleged to be involved in the action or decision being appealed, along with the dates each staff member was involved in the issue being appealed. If the inmate does not have this information, they must provide any other available information that would assist the appeals coordinator in identifying the staff member. Cal. Code Regs., tit. 15, § 3084.2(a)(3); (Hart Decl. ¶ 6).

5. Plaintiff is a California State Prison inmate. At all relevant times alleged in the Second Amended Complaint, Plaintiff was housed at SATF in Corcoran, California. (ECF No. 42 ("Second Am. Compl.") at 11:3–4.)

6. On August 16, 2021, Plaintiff filed her Second Amended Complaint brought under 42 U.S.C. § 1983 alleging an Eighth Amendment deliberate indifference to medical need claim against Defendant Vera-Brown. Plaintiff specifically references her January 7, 2016 grievance and subsequent appeals in her Second Amended Complaint. (Second Am.

---

[6] If filing a grievance before June 1, 2020, an inmate was required to follow the procedures set forth in Title 15, sections 3084–3085; between June 1, 2020, and December 31, 2021, an inmate was required to follow the procedures set forth in Title 15, sections 3480–3487; and beginning January 1, 2022, inmates are required to follow the procedures set forth in Title 15, sections 3480–3485. As Plaintiff's claims relate to an incident that occurred in 2016, the regulations in effect prior to June 1, 2020 apply, and are described herein.

7

1 | Compl.)

2 | 7. Plaintiff filed a CDCR 602 HC on January 7, 2016.  Plaintiff requested she be "prescribed a protein & vitamin supplement, to be referred to a specialist for specialized treatment or to be provided a large financial stipend (monthly) to purchase the supplements myself."  Plaintiff alleged she was seen at Mercy Hospital due to pancreatitis and given recommendations for care that Dr. Kokor refused to prescribe.  Plaintiff filed her final administrative appeal on February 29, 2020 and received a final administrative denial on May 23, 2016.  While Plaintiff's grievance and appeals mention that she reminded Dr. Kokor of previous symptoms she had experienced and that she had raised these issues for years, they make no specific mention of the period from December 20–23, 2015 nor Defendant Vera-Brown.  (Flores Decl. ¶ 9, Ex. C ("HC 602 Log SATF HC 16062725"; Second Am. Compl. at 3.)

8. Neither CDCR nor SATF have record of any exhausted healthcare appeals that reference any grievances filed by Plaintiff that specifically reference Defendant or care received by Plaintiff from December 20, 2015 through December 23, 2015.  (Hart Decl. ¶ 10; Flores Decl. ¶ 9.)

9. SATF has no record of receiving any other appeal that is relevant to the allegations in the Second Amended Complaint.  Plaintiff filed three health care grievances while incarcerated at SATF, none of which specifically refer to either Defendant or the alleged events from December 20–23, 2015.  The Office of Appeals and Inmate Correspondence and Appeals Branch has no record of receiving any appeal from Plaintiff specifically regarding her claims arising from the period of December 20–23, 2015 nor any incident involving Defendant.  (Flores Decl. ¶ 9.)

**D.     Motion to Strike Plaintiff's Sur-Reply**

Generally, parties do not have the right to file sur-replies, and motions are deemed submitted when the time to reply has expired.  Local Rule 230(l).  The Court generally views motions for leave to file sur-replies with disfavor.  *Hill v. England*, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing *Fedrick v. Mercedes–Benz USA, LLC*, 366 F.

8

Supp. 2d 1190, 1197 (N.D. Ga. 2005)).

However, district courts have the discretion to either permit or preclude a sur-reply. *See U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); *JG v. Douglas County School Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file sur-reply where it did not consider new evidence in reply); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond). In this Circuit, courts are required to afford *pro se* litigants additional leniency. *E.g., Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). In addition, this Court's Local Rules permit the filing of an objection to new evidence submitted with a reply brief, if filed no later than seven (7) days after the reply is filed. L.R. 230(m)(1).

Here, Plaintiff did not seek leave of Court before filing the sur-reply, nor did she respond to Defendant's motion to strike to explain why the sur-reply should be considered over Defendant's opposition on the ground that the sur-reply should have been filed within seven days of the reply brief, and instead was filed more than thirty days later. (ECF No. 67.) However, Plaintiff's sur-reply generally explains that she was unable to respond earlier "due to delays in the mail, access to legal documents (held by custody as excess property past 6 ft), and limited library access due to covid restrictions." (ECF No. 66.) Further, the Court finds that Plaintiff's sur-reply was only fourteen days late, as she was permitted an additional three days for mailing under Federal Rule of Civil Procedure 6(d), and pursuant to the prison mailbox rule, the sur-reply was deemed to be filed as of April 7, 2022, the date she delivered it to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1108–09 (9th Cir. 2009) (mailbox rule articulated in *Houston* applies to civil rights actions). Finally, the Court finds that the sur-reply is limited to Plaintiff's response to the newly-presented evidence in Defendant's reply brief, and does not include further argument on the motion. L.R. 230(m)(1).

///

Based on the above, the Court does not find the delay to be exceptional or inexcusable, and will exercise its discretion not to strike Plaintiff's sur-reply. Defendant's motion is denied.

### E. Parties' Positions

Defendant contends that Plaintiff was required to exhaust her administrative remedies prior to initiating this action, Plaintiff had an available remedy through the administrative appeals process, and Plaintiff failed to exhaust her administrative remedies for her claims. Plaintiff did not put prison officials on notice of her claims against Defendant for the period from December 20 to December 23, 2015.

In opposition, Plaintiff argues that she exhausted her administrative remedies by filing appeal SATF HC 16062725 and that naming defendants is not required in the grievance to meet the PLRA requirements. In addition, Defendant was identified by date/time and title during the appeal process, during the interview between Plaintiff and Appeals Office designee interview RN M. Carrasquillo on February 19, 2016. The grievance form leaves a limited amount of space to write in the issues and provides for an interview to fully explain the issue. Plaintiff participated in the interview and detailed all the staff members (including Defendant) and their actions and failures fully. Upon denial of the grievance at the institutional level, Plaintiff used Section D to include the information that Plaintiff had been seeking treatment for an extended period of time prior to the hospitalization. The issue had been addressed, and extra requirements such as requiring Plaintiff to name all defendants in the grievance do not exist.

In reply, Defendant contends that even if Plaintiff's unsupported allegations that she informed an investigating CDCR employee of Defendant's involvement during the grievance investigation, notice to a CDCR employee during an investigative interview is insufficient to prove exhaustion. Further, investigative notes in Plaintiff's medical record demonstrate that Plaintiff did not reference Defendant during the investigative interview with Nurse Carrasquillo on October 19, 2016. Plaintiff also failed to utilize all of the available space on the grievance form and failed to reference the relevant period of time, use the word "nurse," or name Defendant anywhere in the initial grievance. Plaintiff failed to demonstrate a genuine issue of fact exists regarding whether she advised CDCR of Defendant's alleged actions before filing the complaint.

The entire written record, including Nurse Carrasquillo's written notes, demonstrate that Plaintiff never informed CDCR of her complaints against Defendant.

In her sur-reply, Plaintiff asserts that the records attached to Defendant's reply are not a record of the conversation held during the interview, but a supplemental record documenting the medical research conducted after the interview. The medical appeal process is not designed to address staff misconduct, and it is not Plaintiff's fault that CDCR failed in its duties to address the full scope of Plaintiff's appeal.

**F.   Analysis**

    1.   SATF HC 16062725

The parties are in agreement that SATF HC 16062725 was exhausted to the final level of appeal. UMF 7. At issue is only whether the grievance adequately put CDCR on notice of Plaintiff's claims against Defendant regarding Plaintiff's medical treatment from December 20 to December 23, 2015.

Plaintiff argues that references to her ongoing medical treatment during her time at SATF were sufficient to notify prison officials of the issue of not being treated for a pancreas/gastrointestinal problem, leading to Plaintiff's hospitalization and need for further treatment that continued to be denied. Plaintiff asserts that she was not required to name any defendant in her grievance, and a statement regarding her previous and repeated attempts to obtain medical treatment would allow the grievance to encompass all of her treatment during her time at SATF.

Under the regulations in effect at the time, Plaintiff is correct that she was not required to specifically name all staff members involved in the issue(s) raised in the grievance. However, even if Plaintiff did not know Defendant's name at the time she filed her grievance, Plaintiff was still required to provide "any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. UMF 4; Cal. Code Regs. Tit. 15, § 3084.2(a)(3) (repealed June 1, 2020). Plaintiff apparently knew Defendant's title and could specify the dates in question at the time she filed her grievance, but did not include that information on the grievance form, either in the explanation of Plaintiff's issue or in the action

1  requested. (ECF No. 57-6, pp. 8, 10.)

2  Instead, Plaintiff contends that by stating that the issue of her grievance at the institutional level was "FAILURE TO PROVIDE TREATMENT," (*id.* at 8), that she reminded Dr. Kokor of symptoms she previously experienced and had raised before, (*id.* at 10), and after a denial at the institutional level she stated that "For <u>years</u> I have raised these issues and I have been neglected and given poor advice instead of the correct or reasonable treatment," (*id.* at 9), this was sufficient to place prison officials on notice of claims that included all of her attempts to seek treatment prior to her hospitalization.

The Court is not persuaded. Aside from these statements, the remainder of Plaintiff's grievance and appeal provide specific details and dates regarding Plaintiff's hospitalization, discharge, and follow up appointments with Dr. Kokor. (*Id.* at 8–10.) At no point does Plaintiff reference any particular deficiency in her medical treatment prior to her hospitalization, or any staff member aside from Dr. Kokor, such that prison officials would have been on notice that she was pursuing claims against other staff members on other dates. Plaintiff's general statements regarding a lack of diagnosis or treatment for pancreatitis over the course of "years," in the context of a lengthier discussion of her requests for future treatment in accordance with her hospital discharge paperwork, is not sufficient to place prison officials on notice of Plaintiff's allegations that Defendant allegedly ignored Plaintiff's complaints of pain, vomiting, vertigo, loss of extremity sensation, and loss of consciousness by telling Plaintiff to wait to be called out, and ultimately ignoring Plaintiff actively vomiting, falling to the floor, knocking her head, and beginning to choke in Defendant's presence before Plaintiff was hospitalized. Plaintiff was not required to provide "personal notice" to Defendant that she may be sued, *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016), but her grievance nevertheless was required to alert the prison to the "nature of the wrong for which redress is sought," *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010). Plaintiff failed to do so in the initial grievance, and did not attempt to correct the deficiency in the ample space available to her when she appealed the institutional level decision. Plaintiff expressed her dissatisfaction with the institutional level response in the first part of Section D of the appeals form, but wrote "N/A" in the "Continuation of CDCR 602, Section D"

12

1  portion, leaving approximately half of a page blank. (ECF No. 57-6, pp. 9, 11.) Plaintiff cannot
2  claim that she was unaware that this section was available to her, because she wrote "N/A" rather
3  than leaving the section entirely blank, and also signed and dated both below Section D and
4  below the continuation of Section D. (*Id.*)

Accordingly, SATF HC 16062725 did not exhaust Plaintiff's administrative remedies with respect to her claims against Defendant in this action.

### 2. February 19, 2016 Interview with RN Carrasquillo

Plaintiff next asserts that while SATF HC 16062725 does not provide Defendant's name or title or specifically reference the dates at issue, she was not required to name Defendant in the grievance to comply with the PLRA's exhaustion requirement. In addition, Plaintiff named Defendant by date and time of treatment and by her title during the appeal process, specifically during the February 19, 2016 interview between Plaintiff and RN Carrasquillo.

In support of this argument, Plaintiff provides her own declaration in support of her opposition to Defendant's motion for summary judgment, signed under penalty of perjury. (ECF No. 62, pp. 10–11.) In relevant part, Plaintiff declares the following:

> (2) On or about 2/19/2016 I was interviewed by RN M. Carrasquillo at CSATF in regards to appeal SATF HC 16062725. At this interview I explained my issue fully. This explanation contained the incidents from December 20–23, 2015 in regards to defendant V Vera-Brown and her refusal to treat me.
>
> The interview was extensive and addressed the repeated failures to receive treatment. At that interview it is true that I could not identify the nurse by name, she was later identified as (V Vera-Brown) . . .
>
> RN M Carrasquillo stated at the conclusion of the interview that she was "Sorry" the nurse did that to me, and that she would speak to her supervisor to ensure I didn't have the same problem again.
>
> (3) Upon receipt of the appeal response, I noticed the lack of detail regarding the interview, nor was the note sheet I provided to the interviewer included in the response.
>
> (4) When I submitted my appeal for further review, I again used all the space available (and was still unable to write it all down), but I included the fact that I had been denied treatment for an extended period of time in the dialogue.

(*Id.*)

Defendant contends that even if Plaintiff's interview with RN Carrasquillo was sufficient to place prison officials on notice of Plaintiff's claims against Defendant, RN Carrasquillo's written notes from the meeting with Plaintiff do not mention Defendant's name or any treatment from December 20 to December 23, 2015.  Defendant attaches an exhibit to her reply brief, which defense counsel declares encompasses "A copy of all documents from [Plaintiff's] health record related to [her] October 19, 2016 meeting with Nurse M. Carrasquillo[.]"  (ECF No. 64-1, p. 2.)

The Court finds that this exhibit carries minimal weight.  Defendant references an October 19, 2016 interview throughout her reply brief.  (ECF No. 64, pp. 1, 4, 5; ECF No. 64-1, p. 2.)  Considering that the headquarters' level decision on SATF HC 16062725 was issued on May 23, 2016, and in light of Plaintiff's repeated assertions that her meeting with RN Carrasquillo occurred on February 19, 2016, an October 2016 interview date is implausible.  In addition, the exhibit is itself dated February 19, 2016.  (ECF No. 64-2, p. 3.)  Finally, as Plaintiff argues in her sur-reply, the exhibit does not contain RN Carrasquillo's written notes from the interview with Plaintiff.  The document includes a handwritten comment stating "no pt. contact."  (*Id.*)  The typewritten portion of the document further states: "Appeal issues discussed with CP&S for further clarification" and otherwise appears to summarize RN Carrasquillo's review of Plaintiff's hospital notes and discharge paperwork with Dr. Enenmoh, (*id.*), referred to in SATF HC 16062725 as "Chief Physician & Surgeon (CP&S)," (ECF No. 57-4, p. 30).  Based on the above inconsistencies, the Court does not find that Defendant's exhibit reflects RN Carrasquillo's notes from the February 19, 2016 interview with Plaintiff, and the Court declines to rely on the exhibit for that purpose.

Nevertheless, Plaintiff has failed to provide any evidence, other than her own declaration, to support her allegations that her interview with RN Carrasquillo included information about Defendant or her failure to provide Plaintiff with medical care from December 20 to December 23, 2015.  *See Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create

a genuine issue of material fact."). Although Defendant's exhibit does not contradict Plaintiff's allegations, the summary of RN Carrasquillo's February 19, 2016 interview included in the institutional level response to SATF HC 16062725 also does not support Plaintiff's allegations. That response states that during Plaintiff's interview with RN Carrasquillo on February 19, 2016, Plaintiff discussed her request for a diet change and vitamin supplements, was advised that she has pancreatic atrophy and progress notes stated there was no clinical evidence of insufficiency, and was informed by RN Carrasquillo that she would discuss Plaintiff's case with the Chief Medical Executive for further clarification and/or recommendations regarding diet, supplements, and Plaintiff's request for a referral to a specialist. (ECF No. 57-4, p. 30.)

Plaintiff's declaration states that upon receiving the appeal response, she noticed the lack of detail regarding the interview, and the failure to include a note sheet provided to RN Carrasquillo. (ECF No. 62, p. 11.) Plaintiff did not, however, use all the space available to provide this additional detail or attach another copy of the missing note sheet when she appealed the institutional level response to the headquarters' level of review. As noted above, Plaintiff left approximately half of a page blank where she could have expressed further dissatisfaction with the institutional level response. (ECF No. 57-6, pp. 9, 11.) Plaintiff also does not allege that she attached a copy of the note sheet provided to RN Carrasquillo to her appeal, nor does one appear in the exhibits included with SATF HC 16062725. (*See id.* at 14–24.) Thus, there is nothing in the record to provide support for Plaintiff's declaration, and a self-serving declaration cannot alone crate a genuine issue of material fact. *Rivera*, 331 F.3d at 1078.

IV.   **Conclusion and Order**

Based on the foregoing, the Court finds that Plaintiff failed to exhaust her administrative remedies as to her claims against Defendant Vera-Brown.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Defendant's motion to strike Plaintiff's sur-reply, (ECF No. 67), is DENIED;
2. Defendant Vera-Brown' motion for summary judgment for failure to exhaust available administrative remedies, (ECF No. 57), is GRANTED;

///

3. This action is dismissed, without prejudice, for failure to exhaust administrative remedies; and

4. The Clerk of the Court is directed to terminate all pending motions and to close this case.

IT IS SO ORDERED.

Dated:  **March 20, 2025**                    /s/ *Barbara A. McAuliffe*       
                                        UNITED STATES MAGISTRATE JUDGE